**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| PAUL ALKINS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE BOEING COMPANY | : | NO. 19-763 |

### MEMORANDUM

Savage, J.                                                                                     January 2, 2020

Paul Alkins alleges that his former employer, The Boeing Company (Boeing), terminated his employment for exercising his rights under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq. He brings claims under the FMLA for interference (Count I) and retaliation (Count II).[1]

Moving for summary judgment, Boeing contends that Alkins' claims fail because his mental and addiction issues were not "serious health conditions" under the FMLA and because he did not timely submit paperwork necessary for FMLA approval. It also argues that his retaliation claim fails because there is no causal connection between the exercise of his FMLA rights and his termination. Boeing maintains that Alkins' employment was terminated for his repeated failure to follow attendance procedures. Alkins responds that approval of his FMLA leave by Boeing's third-party contractor after his termination demonstrates that he was qualified for FMLA leave and that Boeing's proffered reason for his termination was pretextual. He argues that the five-week period between the start of his leave and his termination establishes a causal connection between the two. He

---

[1] Am. Compl. (ECF No. 11) ¶¶ 39-61.

contends that Boeing merely "expected," rather than required, him to return to work on the designated date.

Because the undisputed facts show that Boeing did not interfere with Alkins' exercising his FMLA rights or retaliate against him for doing so, we shall grant the motion for summary judgment.

## Background

Alkins worked for Boeing as a sheet metal mechanic building helicopters from June 22, 2007, until February 23, 2017.[2] He was a member of United Autoworkers Union Local 169, which had a collective bargaining agreement with Boeing.[3] He does not dispute that he was also subject to various Boeing policies and procedures, including its Drug and Alcohol Free Workplace Program, Attendance Standards, and Leaves of Absence Policy Handbook.[4]

Alkins was addicted to Adderall, methamphetamines and alcohol.[5] He used Adderall for two months before switching to methamphetamines, which he stopped using in October of 2016.[6] He normally took one Adderall of uncertain dosage and did a "little line" of methamphetamines.[7] It is not clear how much alcohol he consumed, but his last

---

[2] Def.'s Stmt. of Undisputed Facts (DSUF) (ECF No. 21-1) ¶ 1; Pl.'s Resp. to DSUF (PRDSUF) (ECF No. 22-1) ¶ 1.

[3] DSUF ¶ 2; PRDSUF ¶ 2.

[4] DSUF ¶ 4; PRDSUF ¶ 4.

[5] DSUF ¶ 6; PRDSUF ¶ 6. These substances were not prescribed to him, and the Aderall and methamphetamines were obtained illegally. DSUF ¶ 6; PRDSUF ¶ 6.

[6] Alkins Dep. Tr. (ECF No. 21-4) 242:4-19; 244:6-17; 290:1-11; 29213-293:3.

[7] *Id.* 290:1-8.

drink was on March 6, 2017.[8] He missed work due to his alcohol use, but claims he never used amphetamines less than seven or eight hours prior to a shift.[9]

Due to his persistent attendance problems, Boeing issued him a verbal warning on April 15, 2015, and three Corrective Action Memos on October 8 and December 17, 2015, and April 11, 2016.[10] These Memos reminded Alkins that he was required "to notify management of any late arrivals and leave early through the proper process" and warned that "[f]uture violations will result in a review for additional corrective action, up to and including discharge from the Company."[11] Boeing also counseled him on attendance requirements, including the need to report any absences or late arrivals via its automated, toll-free Attendance Line.[12]

After Alkins incurred 21 attendance infractions within a 12-month period, Boeing discharged him on October 13, 2016, in accordance with its Attendance Standards.[13] Six days later, Boeing placed his discharge in abeyance because he agreed to complete a treatment program and undergo follow-up alcohol testing for three years.[14] The following day he began four weeks of FMLA leave.[15] From October 20 to November 9, 2016, Alkins

---

[8] *Id.* 243:9-16; Alkins' medical records indicate he relapsed in April or May of 2017, but he claims this information is incorrect. *Id.* 245:1-6.

[9] DSUF ¶ 9; PRDSUF ¶¶ 8-9.

[10] DSUF ¶ 10; PRDSUF ¶ 10.

[11] DSUF ¶ 11; PRDSUF ¶ 11.

[12] DSUF ¶ 13; PRDSUF ¶ 13.

[13] DSUF ¶ 14; PRDSUF ¶ 14. Under Boeing's Attendance Standards, an unauthorized absence constituted one infraction. Attendance Standards – Philadelphia (ECF No. 21-6) § 2.E.1. Unauthorized late arrivals, early departures and absences during work constituted one-third of one infraction, although any two in the same day constituted a full infraction. *Id.* § 2.E.2 – 5.

[14] DSUF ¶¶ 15-16; PRDSUF ¶¶ 15-16.

[15] Simpson-Ruddock Decl. (ECF No. 21-10) ¶ 3.

received inpatient treatment at Livengrin Foundation.[16]  He remained on FMLA leave

through November 17, 2016, but did not receive treatment during this time.[17]

On November 18, 2016, Alkins signed a Last Chance Agreement (LCA) and

returned to work.[18]  He had assistance in going over the terms, read it before signing it,

and understood what it said.[19]  In the LCA, Alkins agreed to report to work regularly and

on time, call the Attendance Line to report absences and late arrivals, and submit FMLA

paperwork as needed.[20]  He also agreed to immediate discharge for cause if he

accumulated two infractions between the date of the LCA and September 18, 2017.[21]

From November 29, 2016, to January 19, 2017, he received outpatient treatment from

Rehab After Work.[22]

On January 19, 2017, Alkins' treatment counselor told him he was unfit for duty.[23]

Alkins requested leave to begin the next day due to anxiety, depression, acute withdrawal

syndrome and stress.[24]  On January 22, 2017, the Reed Group (Reed), Boeing's third-

party contractor that managed employee leave, mailed him a letter acknowledging his

---

[16] DSUF ¶ 17; PRDSUF ¶ 17.

[17] DSUF ¶ 18; PRDSUF ¶ 18; Simpson-Ruddock Decl. ¶ 3.

[18] DSUF ¶ 22; PRDSUF ¶ 22.

[19] Alkins Dep. Tr. 156:19-158:10.

[20] DSUF ¶ 23; PRDSUF ¶ 23.

[21] DSUF ¶ 23; PRDSUF ¶ 23.

[22] DSUF ¶ 21; PRDSUF ¶ 21.

[23] Pl.'s Counterstatement of Material Facts (PCMF) (ECF No. 22-2) ¶ 8; Def.'s Resp. to PCMF (DRPCMF) (ECF No. 24-1) ¶ 8.

[24] DSUF ¶ 24; PRDSUF ¶ 24.  Alkins' sister had also died earlier in January.  PCMF ¶ 5; DRPCMF ¶ 5.  Boeing notes that Alkins was never diagnosed with post-acute withdrawal syndrome.  Alkins Dep. Tr. 175:19-176:6.

request for FMLA leave effective January 20, 2017, and enclosing documents, including a FMLA Health Care Provider Certification form (HCP Form), to be completed and returned by February 6, 2017.[25]  Alkins did not return the form.[26]  On February 14, 2017, Reed mailed Alkins another letter directing him to return to work upon the expiration of his FMLA leave on February 20, 2017.[27]  The letter warned that "[f]ailure to do so may result in termination of employment."[28]

Alkins failed to report to work, call the Attendance Line or have anyone do so on his behalf on February 20, 21, 22 or 23, 2017.[29]  On February 23, 2017, after confirming the day before that Alkins had not requested an extension of leave, Boeing couriered a Corrective Action Memo to him terminating his employment effective immediately.[30]  After Alkins received the Memo, his union representative, Pat Hoffman, came to his house.[31] Alkins and Hoffman called a Case Manager at Reed and expressed concerns about the termination.[32]  The Case Manager asked if Alkins needed to extend his leave and he

---

[25] DSUF ¶¶ 25-26; PRDSUF ¶¶ 25-26.

[26] DSUF ¶ 27; PRDSUF ¶ 27.

[27] Feb. 14, 2017 Ltr. from Reed to Alkins (ECF No. 21-17) at 1.

[28] *Id.*

[29] DSUF ¶ 31; PRDSUF ¶ 31.  Nor had Alkins or anyone acting on his behalf returned the HCP Form mailed to him on January 22, 2017.  DSUF ¶ 27; PRDSUF ¶ 27.

[30] DSUF ¶ 36; PRDSUF ¶ 36; Feb. 22 Reed Case Notes re: Alkins (ECF No. 21-18) at 6; Alkins Dep. Tr. 252:1-4.

[31] Alkins Dep. Tr. 252:5-7.  It is not clear why Hoffman went to Alkins' house.

[32] DSUF ¶ 40; PRDSUF ¶ 40.

responded affirmatively.[33]  Reed sent Alkins a letter enclosing another HCP Form and advising that it would notify him if an extension was approved.[34]

On March 10, 2017, after Alkins had been terminated, Reed approved an extension of his FMLA leave through March 26, 2017.[35]  On March 20, 2017, Alkins submitted a completed HCP Form to Reed.[36]  It indicated he had been diagnosed with mixed bipolar disorder with periods of depression and mania.[37]  From March 7 to March 22, 2017, Alkins received treatment three days per week for eight hours per day at Main Line Health/Mirmont.[38]  Alkins received no other treatment after January 19, 2017.[39]

## Standard of Review

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In examining the motion, we must draw all reasonable inferences in the nonmovant's favor.  *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

---

[33] DSUF ¶ 40; PRDSUF ¶ 40.

[34] DSUF ¶¶ 42-43; PRDSUF ¶¶ 42-43.

[35] DSUF ¶ 46; PRDSUF ¶ 46.

[36] DSUF ¶ 48; PRDSUF ¶ 48.

[37] PCMF ¶ 40; DRPCMF ¶ 40.

[38] PCMF ¶ 36; DRPCMF ¶ 36.

[39] DSUF ¶ 28; PRDSUF ¶ 28.  Although Alkins had been diagnosed with anxiety and depression in 2012, he had not taken medication for those conditions since 2012.  DSUF ¶ 29; PRDSUF ¶ 29.

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. FED. R. CIV. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which it bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## Analysis

### *FMLA Interference*

The FMLA is intended to provide job security for employees with serious health conditions while accommodating employers' legitimate interests. 29 U.S.C. § 2601(a)(4), (b)(3); *Bonkowski v. Oberg Indus., Inc.*, 787 F.3d 190, 195 (3d Cir. 2015). Under the FMLA, an eligible employee is entitled to a total of twelve workweeks of leave during any twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

An employer may not interfere with an employee's exercise of an FMLA right. 29 U.S.C. § 2615. The improper denial of FMLA leave constitutes interference, exposing the employer to liability. *Sommer v. Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006). An

employer may not discharge an employee for exercising his or her rights under the FMLA. *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 403 (3d Cir. 2007).

To prevail on an FMLA interference claim, Alkins must prove: (1) he was an eligible employee under the FMLA; (2) Boeing was an employer subject to the FMLA's requirements; (3) he was entitled to FMLA leave; (4) he gave notice to Boeing of his intention to take FMLA leave; and (5) he was denied benefits to which he was entitled under the FMLA. *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014) (citing *Sommer*, 461 F.3d at 399) (quoted case omitted).

The element in dispute is whether Alkins was entitled to FMLA leave. To prove entitlement, Alkins must prove he had a "serious health condition," as defined in the statute and the regulations, and he gave appropriate notice of his need to be absent from work for the days in question. *Sarnowski*, 510 F.3d at 401-02; *see also* 29 C.F.R. § 825.303. The burden is on Alkins to prove the existence of an FMLA-eligible condition. *Schaar v. Lehigh Valley Health Servs., Inc.*, 598 F.3d 156, 158 (3d Cir. 2010).

An employee is entitled to FMLA leave to deal with "a serious health condition" that renders him unable to work. 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is defined in the FMLA as an "illness, injury, impairment, or physical or mental condition" that involves either "inpatient care in a hospital, hospice, or residential medical care facility" or "continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

Alkins was not receiving inpatient care on February 20, 21, 22 or 23, 2017. Thus, to establish his claim, he must show he was receiving continuing treatment on those dates.

The FMLA does not define what constitutes "continuing treatment" by a health care provider. The FMLA regulations describe conditions that constitute a qualifying "serious health condition involving continuing treatment by a health care provider . . . ." 29 C.F.R. § 825.115. Any period of incapacity exceeding three consecutive days qualifies. *Id.* § 825.115(a). Subsequent treatment qualifies if the employee receives treatment two or more times within 30 days of the onset of incapacity. *Id.* § 825.115(a)(1).[40] Incapacity followed by a continuing treatment regimen under the supervision of a health care provider also qualifies. *Id.* § 825.115(a)(2). In either case, the employee must begin in-person treatment within seven days of the first day of incapacity. *Id.* § 825.115(a)(3). *See also Giddens v. UPS Supply Chain Solutions*, 610 F. App'x 135, 138 (3d Cir. 2015) (former employee failed to raise question of fact where first in-person visit took place nine days after onset of incapacity). "Incapacity" is defined as an "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore or recovery therefrom." *Id.* § 825.113(b).

Alkins became unable to work on January 19, 2017.[41] He did not receive treatment until March 7, 2017.[42] Accordingly, his "first (or only) in-person treatment visit [did not] take place within seven days of the first day of incapacity." 29 C.F.R. § 825.115(a)(3). Even if Alkins had received in-person treatment by January 26, 2017, he did not receive

---

[40] Compliance with the 30-day requirement is excused by the existence of "extenuating circumstances," such as where the health care provider determines that a second visit is needed within the period but none is available. 29 C.F.R. § 825.115(a)(5).

[41] PCMF ¶ 8; DRPCMF ¶ 8.

[42] PCMF ¶ 36; DRPCMF ¶ 36.

treatment a second time "within 30 days of the first day of incapacity," nor was he was undergoing "a regimen of continuing treatment."  29 C.F.R. § 825.115(a)(1)-(2).

A serious health condition involving continuing treatment also includes a chronic condition.  A "chronic serious health condition" is "[a]ny period of incapacity" that (a) "[r]equires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;" (b) "[c]ontinues over an extended period of time;" and (c) may "cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)."  29 C.F.R. § 825.115(c).

Alkins became incapacitated due to anxiety, depression, acute withdrawal syndrome and stress.[43]  Although he had been diagnosed with anxiety and depression in 2012, he received no treatment for those conditions since that time.[44]  He admitted that he had never been diagnosed with and never treated for acute withdrawal syndrome.[45]  The only reference to "stress" in his medical records is in his HCP Form completed on March 20, 2017, two months after his incapacitation began.[46]  Thus, none of these conditions were "chronic" within the meaning of 29 C.F.R. § 825.115(c).

Alkins argues that Boeing is prohibited from challenging his FMLA eligibility at the time of his termination "because the third-party administrator to which [Boeing] delegated all such determinations found that [Alkins] was, in fact, eligible for FMLA based on [his] own serious health condition."[47]  However, Reed did not approve an extension of FMLA

---

[43] DSUF ¶ 24; PRDSUF ¶ 24.

[44] DSUF ¶ 29; PRDSUF ¶ 29.

[45] Alkins Dep. Tr. 175:19-176:6

[46] Pl.'s Memo. in Opp. to Def.'s Mot. for Summ. J. (ECF No. 22) at Ex. G.

[47] *Id.* at 4.

leave for Alkins until March 10, 2017.[48]  Alkins' employment had already been terminated

two weeks earlier for his breach of the LCA.  Consequently, Alkins' February 20 through

23, 2017 absences were not FMLA-protected at the time they occurred.  Reed's

subsequent determination of eligibility did not make them so retroactively.[49]  Additionally,

Alkins did not give notice of his need to be absent, an essential element of an interference

claim.

*FMLA Retaliation*

"Retaliation claims arise out of the Medical Leave Act's prohibition on employers

'discharg[ing] or in any other manner discriminat[ing] against any individual for opposing

any practice made unlawful.'"  *Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149,

158-59 (3d Cir. 2015) (quoting 29 U.S.C. § 2615(a)(2)); *Ross*, 755 F.3d at 193; *see also*

29 C.F.R. § 825.220(c) (prohibiting employers from "discriminating or retaliating against

an employee or prospective employee for having exercised or attempt[ing] to exercise

FMLA rights").  Claims based on indirect evidence are analyzed under the three-step

*McDonnell Douglas–Burdine* burden-shifting standard.[50]  *Doe v. C.A.R.S. Protection*

*Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*,

411 U.S. 792, 802 (1973)).  To establish a prima facie case of FMLA retaliation, an

employee must show: (1) he requested FMLA leave; (2) he suffered an adverse

---

[48] DSUF ¶ 46; PRDSUF ¶ 46.

[49] DSUF ¶ 36; PRDSUF ¶ 36.

[50] We did not analyze Alkins' interference claim under this standard because such a claim "is not about discrimination . . . ."  *Ross*, 755 F.3d at 192 (quoting *Sommer*, 461 F.3d at 399).  "Under an interference claim, 'the employee need not show that he was treated differently than others[, and] the employer cannot justify its actions by establishing a legitimate business purpose for its decision."  *Id.* (quoting *Sommer*, 461 F.3d at 399).  For this reason, the *McDonnell Douglas–Burdine* burden shifting framework does not apply to FMLA interference claims.  *Id.*

employment action; (3) the adverse action was causally related to the request for or taking of leave. *Ross*, 755 F.3d at 193. If he does, the employer must then produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. At the third step, to defeat summary judgment, the plaintiff must show that the employer's proffered reason was merely a pretext for the real reason behind the adverse action. *C.A.R.S. Protection Plus, Inc.*, 527 F.3d at 364.

Here, the first two elements are undisputed. Alkins requested leave on January 19, 2017, and began it the following day.[51] The termination of his employment five weeks later on February 23, 2017, was an adverse employment action.[52] It is the third element—whether Alkins has produced evidence of a causal connection between his leave and his termination—that is disputed.

A plaintiff may establish this connection through the "unusually suggestive temporal proximity" of the adverse action to the protected activity, "a pattern of antagonism coupled with timing," or other facts supporting an inference of causation. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Alkins maintains that the five-week period at issue here suggests causation.[53] "[T[here is no bright line rule as to what constitutes unduly suggestive temporal proximity . . . ." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007). We have held longer periods of time were "not so long as to preclude a finding of a causal connection" between a request for FMLA leave and a subsequent termination. *Beishl v. Cty. of Bucks*,

---

[51] DSUF ¶ 24; PRDSUF ¶ 24.

[52] DSUF ¶ 36; PRDSUF ¶ 36.

[53] Pl.'s Memo. in Opp. to Def.'s Mot. for Summ. J. at 22.

No. 18-2835, 2018 WL 6812132, at *7 (E.D. Pa. Dec. 27, 2018) (three months between requests and termination); *Mercer v. Dietz & Watson, Inc.*, No. 15-3928, 2015 WL 7294901, at *4 (E.D. Pa. Nov. 19, 2015) (two months between request and termination). The five-week period in this case is sufficient to raise a jury question whether Alkins' termination was causally connected to his taking FMLA leave.

Assuming Alkins has shown a causal connection, we proceed to determine whether Boeing has proffered a legitimate, non-retaliatory reason for the termination of his employment. Although Boeing advised Alkins that his return date was February 20, 2017, and failure to report to work on that date could result in his termination, he failed to do so. Nor did he report to work the following three days. Neither he nor anyone else called Boeing's Attendance Line to report the absences. Alkins' repeated failure to report to work and to follow Boeing's absence-reporting policies was a facially legitimate and non-retaliatory basis for his termination.[54] *See Stephenson v. City of Phila.*, 293 F. App'x 123, 125 (3d Cir. 2008) (failure to report to work or provide paperwork required under FMLA was legitimate, non-retaliatory reason for termination).

Boeing having demonstrated a legitimate, non-retaliatory reason for terminating his employment, the burden shifts to Alkins to point to some evidence from which a fact finder could reasonably either disbelieve Boeing's legitimate reason or believe that retaliation was more likely than not a motivating or determinative cause of the termination.

---

[54] Feb. 14, 2017 Ltr. from Reed to Alkins at 1; DSUF ¶ 31; PRDSUF ¶ 31. Alkins also argues that February 20, 2017, was "merely an estimated return-to-work date" because the letter stated that he was "expected to return to work" on that date. Feb. 14, 2017 Ltr. from Reed to Alkins at 1. We disagree. The "Claims Status Summary" chart in the letter specified that Alkins' non-occupational medical leave, FMLA leave and short term disability benefits all expired on February 19, 2017. *Id.* at 1-2. The letter warned that Alkins could be terminated if he did not report to work "on the first scheduled work day following the expiration of your leave of absence . . . ." *Id.* at 1. The letter advised that his return date was February 20, 2017. *Id.*

*Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). Alkins has not done so. He claims his failure to comply with the "Attendance Line requirement" was excused by his mental breakdown, and he complains that Boeing should have telephoned him before his termination in light of it.[55] He does not explain away his failure to report to work, call the Attendance Line, or have anyone do so on his behalf for four consecutive days, February 20 through 23, 2017.[56] After the third day, Boeing terminated his employment.[57] Under the LCA, Alkins agreed to use the Attendance Line to report any absences, and Boeing could terminate him after a second unreported absence.[58] We disagree that a reasonable jury could find that Boeing "was so quick to terminate [Alkins'] employment" as to suggest that its proffered reason for doing so was not a legitimate, non-retaliatory reason.[59]

Alkins also argues that the basis for his termination was pretextual because Reed subsequently approved him for FMLA leave for the dates in question. However, as noted, Alkins was terminated on February 23, 2017, two weeks before Reed approved him for FMLA leave on March 10, 2017.[60] Reed's after-the-fact approval does not render Boeing's earlier termination of Alkins' employment retaliatory.

---

[55] Pl.'s Memo. in Opp. to Def.'s Mot. for Summ. J. at 14.

[56] DSUF ¶ 31; PRDSUF ¶ 31.

[57] Feb. 22, 2019 Email from Michael Marchiano to Amantha Simpson-Ruddock (ECF No. 21-19) at 2.

[58] DSUF ¶ 23; PRDSUF ¶ 23.

[59] Pl.'s Memo. in Opp. to Def.'s Mot. for Summ. J. at 14.

[60] DSUF ¶ 46; PRDSUF ¶ 46.

No reasonable jury could disbelieve that Alkins' failure to follow Boeing's attendance policies and violation of the LCA was the reason for the termination of his employment or believe that retaliation was a motivating factor in Boeing's decision.

**Conclusion**

Because the undisputed facts demonstrate that Boeing did not interfere with Alkins' FMLA rights or retaliate against him for exercising them, it is entitled to judgment as a matter of law.  Thus, we shall grant Boeing's motion for summary judgment.